**Vergina PAPAZYAN, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–74389.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2006.

Decided June 6, 2006.

Wallace, Circuit Judge, filed dissenting opinion.

Inna Lipkin, Esq., Law Offices of Inna Lipkin, Redwood City, CA, for Petitioner.

Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Michael P. Lindemann, Esq., Lisa M. Arnold, Ernesto H. Molina, Jr., Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: WALLACE, HAWKINS, and THOMAS, Circuit Judges.

### MEMORANDUM *

Vergina Papazyan petitions for review of the Board of Immigration Appeal's ("BIA's") decision affirming without opinion the Immigration Judge's ("IJ's") denial of her applications for asylum, withholding of removal and relief under the Convention Against Torture. We grant the petition for review.

Where the BIA affirms the IJ without an opinion, the IJ's opinion becomes the final agency action and we review the IJ's opinion. *Lopez–Alvarado v. Ashcroft,* 381 F.3d 847, 851 (9th Cir.2004). An alien seeking withholding from removal bears the burden of demonstrating that it is "more likely than not" that she will be persecuted on account of one of the five protected grounds of race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1231(b)(3). An alien's credible testimony can sustain this burden without corroboration. 8 C.F.R. § 208.16(b). If the applicant demonstrates past persecution, it is presumed that future persecution is more likely than not. 8 C.F.R. § 208.16(b)(1); *Ramadan v. Gonzales,* 427 F.3d 1218, 1222 (9th Cir.2005). This presumption may be rebutted by a finding that there has been

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

"a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds ... upon the applicant's removal to that country," 8 C.F.R. § 208.16(b)(1)(i)(A), or that the applicant could avoid any threat of future persecution by relocating to another part of the country designated for removal, where it is reasonable to expect the applicant to do so. 8 C.F.R. § 201.16(b)(1)(B). Unlike asylum, which is discretionary, withholding of removal is mandatory. *Boer–Sedano v. Gonzales,* 418 F.3d 1082, 1092 (9th Cir. 2005).

The IJ found Papazyan not credible, and therefore that she had not met her burden of demonstrating eligibility for withholding of removal. We review adverse credibility determinations for substantial evidence, and uphold the determination unless the evidence in the record compels a contrary result. *Hoque v. Ashcroft,* 367 F.3d 1190, 1194 (9th Cir.2004). An adverse credibility determination must be supported by "specific, cogent reasons," *Id.* at 1195 (citation omitted), which must be "substantial and bear a legitimate nexus to the finding." *Id.* (citation omitted). Under this standard, the IJ's "conclu[sion] that [Papazyan] ha[d] not met her burden with respect to producing credible testimony that is sufficiently detailed, believable and consistent" cannot be upheld.

The IJ supported the determination with the following reasons: (1) various discrepancies between Petitioner's application for asylum and her testimony, or between different portions of testimony; (2) the vagueness of Petitioner's description of how she traveled to Moscow in 1994; (3) the implausibility of Petitioner's claim that she had her money on her person when her home was burned; (4) her confused testimony regarding the dates of travel to the United States; (5) the possibility that she could have obtained legal status in Armenia; and (6) her demeanor.

■ First, the discrepancy between her asylum application's statement that she was widowed and her testimony that her husband was alive and in Russia results from Papazyan's obtaining assistance in filling out her application in English. *See Garrovillas v. INS,* 156 F.3d 1010, 1013–14 (9th Cir.1998) ("It is quite possible that the attorney who filed the application stretched the facts without informing [petitioner]. Moreover, there was no reason for [petitioner] to disavow the earlier statement other than a desire to correct an error of which he had not been aware.").

■ Second, regarding the vagueness of her travel to Moscow, Papazyan was never asked to provide further details. "While the testimony may have been unclear, 'unclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony.'" *Quan v. Gonzales,* 428 F.3d 883, 886 (9th Cir.2005) (quoting *Guo v. Ashcroft,* 361 F.3d 1194, 1200 (9th Cir. 2004)).

■ Third, the IJ disbelieved Papazyan's testimony that she had her money on her person at the time that her home in Sochi City was burned. The adverse credibility finding of an IJ who "finds a petitioner's testimony implausible based solely on 'conjecture and speculation' that the testimony, though uncontroverted by any evidence that the IJ can point to in the record, is inherently unbelievable," is not entitled to deference. *Jibril v. Gonzales,* 423 F.3d 1129, 1135 (9th Cir.2005) (quoting *Vera–Villegas v. INS,* 330 F.3d 1222, 1231 (9th Cir.2003)).

■ Fourth, the IJ relied on Papazyan's difficulty in articulating the timeline of her travels from Sochi City to Moscow to the

United States. We have warned against treating confusion over dates as substantial evidence of adverse credibility. *See Singh v. Gonzales,* 403 F.3d 1081, 1090–92 (9th Cir.2005) ("The ability to recall precise dates of events years after they happen is an extremely poor test of how truthful a witness's substantive account is.")

Fifth, the IJ's statement that "respondent was never denied status in Armenia but was simply told to wait her turn and that she grew impatient and left on her own without waiting her turn" is contradicted by the record. Papazyan's asylum application states that even after officials of the Armenian Passport Registration Department told her that "it was useless to wait any longer," Papazyan and her husband continued to wait for status, until, they were attacked in their refugee camp.

Finally, the IJ characterized Papazyan's "attitude" as "sometimes impetuous and sometimes a bit belligerent and attempting to put the burden on the questioner to just accept the case and appears to be insulted that her claim is questioned." Although this court "give[s] 'special deference' to a credibility determination that is based on demeanor," evidence of those aspects of demeanor cited by the IJ must be ascertainable from the record. *Jibril,* 423 F.3d at 1137. The IJ's claim that Papazyan was impetuous and belligerent is not supported by the record. Papazyan appears confused and even frustrated at several points in her hearing, but never does she approach "impetuous" or "belligerent."

None of the bases relied on by the IJ for the adverse credibility finding are supported by the record. To the contrary, a thorough review of the record indicates that Petitioner's testimony and evidence was "so credible that no reasonable factfinder could find that [s]he was not credible." *Farah v. Ashcroft,* 348 F.3d 1153, 1156 (9th Cir.2003) (quotation omitted). "Because we find that the IJ's adverse credibility finding is not supported by substantial evidence, we accept [petitioner's] testimony as true for the purposes of the remaining analysis." *Quan,* 428 F.3d at 888.

■ Accepting Papazyan's testimony as true, it clearly demonstrates past persecution. First, she was attacked in her home in Baku, Azerbaijan by a group of individuals, some of whom were dressed in police uniforms, and who referred to her as an "Armenian dog." One of these individuals raped her. This amounts to past persecution on account of a protected ground. 8 U.S.C. § 1101(a)(42)(A). "It is clear that rape or sexual assault 'may constitute persecution.'" *Shoafera v. INS,* 228 F.3d 1070, 1074 (9th Cir.2000) (quoting *Lopez–Galarza v. INS,* 99 F.3d 954, 959 (9th Cir.1996)). Here, where Papazyan was insulted as an "Armenian dog" during the attack, the motive for the attack is clearly the protected ground of nationality. *See Boer–Sedano,* 418 F.3d at 1089 (holding that a police officer's words during an assault "make clear that he was motivated by [a protected ground.]") (citing *Borja v. INS,* 175 F.3d 732, 735–36 (9th Cir. 1999)(en banc)).

■ Second, Papazyan was badly beaten by Armenian ultranationalists when her refugee camp was attacked. Although she appealed to the authorities, they were unable or unwilling to help her. Violence on the part of individual citizens can constitute persecution for asylum purposes when the victim reports the violence to authorities who do not investigate the matter. *See Tchoukhrova v. Gonzales,* 404 F.3d 1181, 1195 (9th Cir.2005) ("As the [ ] government was 'unwilling or unable' to control the conduct of those who assault[ed] them], the [Petitioners] are entitled to seek asylum ... on that basis."); *Chand v. INS,* 222 F.3d 1066, 1073–74 (9th

Cir.2000)("Physical harm has consistently been treated as persecution.").

Third, Petitioner again suffered persecution during large-scale attacks carried out by a group of some 500 "Kossaks" against Armenians in that Sochi City. Her home was burned and she was beaten, and was then refused complete medical treatment because she was not a registered resident. *Chand*, 222 F.3d at 1073–74.

Because Papazyan has shown past persecution, it is presumed that she has demonstrated a well-founded fear of future persecution, unless the government establishes by a preponderance of the evidence "a fundamental change in circumstances such that [Papazyan] no longer has a well-founded fear of persecution." 8 C.F.R. § 208.16(b)(1); *Duarte de Guinac v. INS*, 179 F.3d 1156, 1163 (9th Cir.1999). The government has made no such showing, however, neither in its arguments to this court nor before the IJ and BIA below.

In these circumstances, "[t]here is no need to remand to the BIA under *INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), to consider whether changed country conditions rebut [Papazyan's] presumptive fear of future persecution." *Baballah v. Ashcroft*, 367 F.3d 1067, 1078 n. 11 (9th Cir.2004). Papazyan has therefore demonstrated her entitlement to withholding of removal.

Because she has met the more demanding statutory standard for withholding of removal, Papazyan is presumably also statutorily eligible for asylum. On remand, in addition to entering an order withholding Petitioner's removal, the agency should exercise its discretion on Papazyan's asylum claim.

We grant the petition for review on these grounds and therefore do not reach

Petitioner's claim for relief under the Convention Against Torture.

PETITION GRANTED.

WALLACE, Circuit Judge, dissenting.

The majority inexplicably concludes that Vergina Papazyan's testimony was "so credible that no reasonable factfinder could find that she was not credible." I disagree. In my view, "the IJ established a legitimate, articulable basis to question [petitioner's] credibility and offered specific, cogent reasons for disbelief as required under our law." *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir.2003). Although only one is needed, the IJ provided at least three well-supported and independently sufficient bases for doing so. I would uphold the adverse credibility determination.

Vergina Papazyan's asylum application maintained that her husband had been murdered "on the ground that he was Azerbaijanian and Muslim." However, she testified at her hearing that her husband was alive. The question of whether Papzayan's husband is alive or whether he was murdered because of his religion and race is clearly an inconsistency that goes to the heart of Papazyan's asylum claim. The majority states that the discrepancy came about because Papazyan sought help filling out her asylum application in English. This conclusion will surprise Papazyan, as she never made this argument in her brief. It is only speculation of the majority.

"Our review ends if there is evidence to support the IJ's adverse credibility decision." *Li v. Ashcroft*, 378 F.3d 959, 960 (9th Cir.2004). The record does not compel reversal on this issue. Papazyan's asylum application averred that her husband was murdered because of his religion or race. Her oral testimony indicated that he was alive, well, and reachable by tele-

phone. The adverse credibility determination should be upheld on this ground alone.

To my mind, there are other significant inconsistencies in Papazyan's testimony, although the majority does not address them. One of the pivotal allegations in her written application was that in 1990 she was beaten and raped in Azerbaijan because of her Armenian ancestry. In her oral testimony she stated she was raped in 1992. We have held that "[m]inor errors or inconsistencies do not constitute a valid ground upon which to base a finding that an asylum applicant is not credible." *Hoque v. Ashcroft,* 367 F.3d 1190, 1195 (9th Cir.2004). However, a discrepancy of two full years as to the date of an allegedly brutal rape and attack is not necessarily minor. In any event, "[t]he IJ is, by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth." *Kaur v. Gonzales,* 418 F.3d 1061, 1067 (9th Cir.2005) (internal quotation marks and citation omitted). Papazyan has not demonstrated that the evidence "compels" reversal.

Papazyan's application declared that a hospital refused to treat her altogether because of her ethnicity. However, she testified orally that she was in the hospital for between fifteen days and one month and that she received twenty stitches to her head. The issue of whether she was denied medical treatment because of her ethnicity clearly goes to the heart of the claim. Again, Papazyan has not demonstrated that the evidence "compels" reversal of the adverse credibility determination.

These are just three of the *ten* reasons the immigration judge listed for finding Papazyan incredible. When an IJ lists multiple reasons for finding the applicant incredible, we must accept the IJ's finding if even one of the listed reasons that goes to the heart of the applicant's claim is supported by substantial evidence. *Li,* 378 F.3d at 964. As outlined above, at least three of the ten inconsistencies found by the IJ meet this test. Additionally, all ten inconsistencies together could lead a reasonable factfinder to find that Papazyan was not credible, as "false statements and other inconsistencies must be viewed in light of all the evidence presented in the case." *Kaur,* 418 F.3d at 1066. Given the multiple inconsistencies, I am puzzled by the majority's conclusion that Papazyan is "so credible that no reasonable factfinder could find that she was not credible."

Like the majority, I feel sympathy for Vergina Papazyan's position, as she is an elderly woman who has probably experienced hardship. A feeling of sympathy, however, is legally insufficient to justify such a wholesale rejection of the adverse credibility finding. Although the majority asserts our deferential standard of review, the analysis eviscerates it. Papazyan was "required to establish that the evidence was so compelling that this court must find it worthy of credence and must order [petitioner] eligible for asylum relief." *Farah,* 348 F.3d at 1153; *see also* 8 U.S.C. § 1252(b)(4)(B). No reasonable reading of the record could indicate that she has met this standard.

I respectfully dissent.